# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General
of the State of New York,

**VERIFIED PETITION**

Petitioner,

- against -

Index No.

QCX LLC (d/b/a Polymarket US),

Respondent.
----------------------------------------------------------------x

Petitioner, the People of the State of New York, by its attorney, Letitia James, Attorney General of the State of New York ("OAG" or "Petitioner"), alleges upon the records and documents contained in the files of the offices of OAG:

**NATURE OF THE ACTION**

1. Petitioner brings this action pursuant to New York Executive Law ("Executive Law") § 63(12).

2. Gambling is illegal in New York with certain limited exceptions.

3. New York allows certain gambling businesses to operate once licensed by the New York State Gaming Commission.

4. Respondent QCX LLC (d/b/a Polymarket US) ("Polymarket" or "Respondent"), along with its parent corporation and affiliates, operates as a business various websites and mobile device applications offering "prediction markets," which allow bettors to gamble on a variety of sports and other events.

5. Respondent launched the Polymarket U.S. mobile application in 2025, announcing on December 3, 2025 that it was "launching with sports—followed by markets on everything." For example, Respondent's "prediction market" offered "event contracts" to U.S.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

bettors on whether the New York Knicks would defeat the San Antonio Spurs in the NBA finals, and later, the "New York Governor Election Winner," and which contestant would be eliminated in week four of the reality TV show "Big Brother Season 28."

6. Respondent has advertised that it is "legal in all 50 states."

7. Respondent has persistently advertised sports betting on its platform since at least July 21, 2025. For example, on August 17, 2025, Polymarket posted on its X.com account an advertisement for the launch of its U.S.-based mobile application, stating "BAD NEWS (For sportsbooks): Polymarket is coming home to the US. Be the first to know when. TRADE EVERY FOOTBALL GAME IN ALL 50 STATES" (emojis omitted).

8. Respondent repeatedly advertised and solicited gambling on the Platform to persons located in New York via the internet, including through social media sites such as X.com. For example, Polymarket posted numerous advertisements on its X.com account leading up to the February 8, 2026, Super Bowl between the New England Patriots and Seattle Seahawks. Respondent has also offered bettors the ability to wager on games involving New York professional and college teams, such as whether the New York Mets would win a baseball game against the Atlanta Braves or who would win college football games, such as the September 3, 2026, game between the University of Albany and the University of Buffalo.

9. The gambling business operated by Respondent, along with its parents and affiliates, reportedly is valued at more than $20 billion. Since launching its U.S. platform, that business's annualized revenue is reportedly well over $1 billion. But Respondent seeks to avoid



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the legal and financial consequences of New York's close regulation of gambling by offering what is quintessentially wagering under the guise of "event contracts" on a "prediction market."

10. Respondent accepts wagers from members of the public as a gambling business in New York in flagrant disregard of New York's State Constitution, penal laws, and other statutes.

11. Respondent is not licensed with the New York State Gaming Commission in any capacity.

12. OAG consequently seeks an order from this Court finding that Respondent has engaged in repeated and persistent illegality.

13. Specifically, Respondent has engaged in repeated and persistent illegal acts under Executive Law § 63(12), including: (a) violating New York State Constitution Article I, Section 9 (NY CLS Const Art I, § 9) by operating a platform that enables bettors to risk or stake something of value upon the outcome of a future contingent event not under the bettor's control or influence, upon an agreement or understanding that the bettor will receive something of value in the event of a certain outcome; (b) violating New York Penal Law § 225.05 by knowingly advancing and profiting from unlawful gambling activity, and New York Penal Law § 225.10 by receiving and accepting in any one day more than five bets totaling more than $5,000; (c) violating New York Penal Law § 225.20 by, with knowledge of the contents thereof, possessing any writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise and constituting, reflecting or representing more than five bets totaling more than $5,000; (d) violating Section 1367(16)(a) of the New York Racing, Pari-Mutuel Wagering and Breeding Law (hereinafter "Racing Law") by knowingly offering or attempting to offer unauthorized sports wagering or mobile sports wagering in New York; (e) violating Racing Law § 1367-a(2)(a) by administering, managing, or otherwise making available



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

a mobile sports wagering platform to persons located in New York without a license; (f) violating Racing Law § 1367-a(4)(b) by directly or indirectly operating an unlicensed sports wagering platform in New York and by advertising or promoting the unlicensed platform to persons located in New York; and (g) violating the Federal Interstate Wire Act, 18 U.S.C. § 1084(a) ("Wire Act"), by its use of wire communication facilities for the transmission in interstate commerce of (1) bets or wagers, (2) information assisting in the placing thereof on a sporting event or contest, or (3) a wire communication confirming payments resulting from bets or wagers.

14. Petitioner seeks an order and judgment: (a) permanently enjoining Respondent from continuing to operate a gambling business in New York without being licensed by the New York State Gaming Commission; (b) permanently enjoining Respondent and its principals, agents, and employees from violating the Constitution and laws of the State of New York, including Executive Law § 63(12), Penal Law §§ 225.05, 225.10, 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b), and 18 U.S.C. § 1084(a); (c) directing Respondent to produce an accounting of all bets placed, monies lost by customers in connection with its gambling business, and monies paid to Respondent in connection with its gambling business; (d) directing Respondent to pay restitution, disgorgement, damages, and penalties; (e) pursuant to Penal Law § 80.10, directing Respondent to pay a penalty of three times the amount of Respondent's gain from the illegal practices alleged herein; (f) pursuant to Racing Law § 1367(16)(a), directing Respondent to pay a penalty of $100,000 for each offer or attempt to offer sports wagering or mobile sports wagering in New York without authorization; (g) pursuant to CPLR § 8303(a)(6), granting costs to New York of $2,000; and (h) granting such other and further relief as the Court deems just and proper.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## PARTIES

15. Petitioner is the People of the State of New York, by its attorney, Letitia James, Attorney General of the State of New York. The State of New York has an interest in upholding the laws of the State, and OAG is charged with enforcing those laws. OAG brings this action on behalf of the People of the State of New York pursuant to, among other authorities, Executive Law § 63(12).

16. Respondent QCX LLC (d/b/a Polymarket US) is a Delaware limited liability company with its principal place of business in New York, New York. Andreu Aff. ¶ 5, Ex. 5 ¶ 12.[1] Respondent through its gambling platform promotes, accepts and receives wagers on all types of events, including sports, elections, and culture.

## JURISDICTION AND VENUE

17. Petitioner brings this special proceeding pursuant to Executive Law § 63(12) to enjoin Respondent's illegal business practices. Petitioner also seeks an accounting, restitution, disgorgement, damages, civil penalties, and costs, as authorized by law, to be paid to New York.

18. Executive Law § 63(12) authorizes OAG to apply for an order enjoining the continuation of repeated fraudulent or illegal acts in the carrying on, conducting or transacting of business affecting the interests of the public within New York. Executive Law § 63(12) expressly authorizes OAG to make such application by "action or proceeding." Executive Law § 63(12) also empowers OAG to seek restitution, disgorgement, damages, injunctive relief, and costs when any person or business entity has engaged in repeated fraudulent or illegal acts or has

---

[1] References herein to "Andreu Aff." refer to the Affirmation of Geoffrey R. Andreu filed in support of this Petition and its accompanying exhibits ("Ex."). "Metz Aff." refer to the Affirmation of Brian Metz filed in support of this Petition and its accompanying exhibits.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transacting of business.

19. The Court has jurisdiction over the subject matter of this action, personal jurisdiction over the Respondent, and authority to grant the relief requested pursuant to Executive Law § 63(12).

20. Pursuant to CPLR § 503 venue is proper in New York County because OAG's New York office is located in New York County and Respondent's principal place of business is in New York County. Andreu Aff. ¶ 5, Ex. 5 ¶ 12.

## FACTS

### I. New York Closely Regulates Gambling

21. New York has policed gambling within its borders for over 250 years, since 1771. *See Saratoga County Chamber of Commerce, Inc. v Pataki*, 100 NY2d 801, 825-830 (2003) (Smith, J., concurring in part) (history of New York's anti-gaming laws).

22. The New York Constitution prohibits gambling in all forms not specifically enumerated in Article I. The New York Constitution states:

> [E]xcept as hereinafter provided, no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except lotteries operated by the state . . . , except pari-mutuel betting on horse races . . . , and except casino gambling at no more than seven facilities . . . shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section.

NY CLS Const Art I, § 9.

23. New York's Penal Law similarly has long recognized crimes for promoting gambling activity, Penal Law §§ 225.05, 225.10, and crimes for possession of gambling records, Penal Law §§ 225.15, 225.20.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

24. Gambling is specifically defined under New York Penal Law. A person "engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." Penal Law § 225.00(2).

25. In 2019, following the U.S. Supreme Court's recognition of states' rights to authorize and regulate sports wagering within their borders, *see Murphy v NCAA,* 584 US 453 (2018), New York enacted a comprehensive regulatory regime for mobile sports wagering, *see* Racing Law §§ 1367, 1367-a.

26. The New York State Gaming Commission has general jurisdiction over all gaming activities within New York and over the corporations, associations, and persons engaged therein, including, specifically, the regulation of sports wagering. Racing Law §§ 104(1), (24). New York's nine mobile sports licensees are subject to significant statutory and regulatory requirements under Section 1367-a of the Racing Law. Mobile sports wagers made through virtual or electronic means must be made through mobile sports wagering licensees from a location within the state and transmitted to and accepted by electronic equipment located at a licensed commercial casino gaming facility in New York. *See* Racing Law §§ 1367(2)(d), 1367-a(2)(d).

27. Under the Racing Law, sports wagering is defined as wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sport event, or combination of sporting events, by any system or method of wagering. Racing Law § 1367(1)(x).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

28. New York prohibits sports wagering by minors. Racing Law § 1367(2)(d). New York's Racing Law defines "minors" as anyone under the age of 21. Racing Law § 1367(1)(j). The Racing Law prohibits any mobile sports wagering licensee from permitting sports wagering by anyone they know, or should have known, to be a prohibited sports bettor. Racing Law §1367-a(4)(d). The Racing Law further states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . prohibit minors from participating in any sports wagering pursuant to rules and regulations promulgated by the commission." Racing Law § 1367-a(4)(a)(iii).

29. New York also prohibits sports wagering on events in which New York college teams participate, and even duly licensed mobile sports wagering licensees are prohibited from offering such wagering. New York's Racing Law defines a "prohibited sports event" to include "a sport or athletic event in which any New York college team participates regardless of where the event takes place." Racing Law §1367(1)(s). The Racing Law prohibits any mobile sports wagering licensee from offering any sports wagering based on any prohibited sports event. Racing Law § 1367-a(4)(c). New York's Racing Law states that "[a]s a condition of licensure, each mobile sports wagering operator shall . . . ensure no sports wagering shall be based on a prohibited sports event." Racing Law § 1367-a(4)(a)(xi).

30. New York receives significant tax revenue from licensed casinos and mobile sports wagering licensees, the latter of which are taxed at a rate of approximately 51% of gross revenues. Andreu Aff. ¶ 2, Ex. 1 at 4 (New York State Gaming Commission website). Sports wagering revenue taxes are primarily used for public school funding as well as sports programs for underserved youth and problem gambling education and treatment. *Id.* In 2024, mobile



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

sports wagering operators generated approximately $2 billion in gross gaming revenue, paying more than $1 billion in state taxes. Andreu Aff. ¶ 2, Ex. 2 at 12 (Annual Report).

## II. Respondent's Unlicensed Gambling Platform

### A. Respondent Promotes Gambling

31. On July 21, 2025, Polymarket Chief Executive Officer Shayne Coplan announced that Polymarket would soon launch its U.S.-based prediction market platform that would "let [Polymarket] serve all American traders and brokerages." Andreu Aff. ¶ 3, Ex. 3 (X.com post). This U.S.-based platform allows bettors to place wagers on all types of events, including sports, politics, and culture, from Respondent's website and mobile device application (collectively, the "Platform"). *See* generally Metz Aff.

32. Respondent launched the Platform for select U.S. users on or around December 3, 2025, which has since grown to allow its bettors to place wagers on all types of events, including sports, politics, and culture. Andreu Aff. ¶ 4, Ex. 4A (X.com post). On or around May 12, 2026, Respondent reportedly made the Platform available for all U.S. iPhone users. Andreu Aff. ¶ 4, Ex. 4B (news article). By August 27, 2026, at the latest, Respondent made wagering on the Platform available to internet users by navigating to the website Polymarket.US using a web browser. Metz Aff. ¶ 29.

33. Since launch, Respondent repeatedly has advertised and solicited gambling on its Platform to persons located in New York and elsewhere via the internet. For example, on August 7, 2026, although unlicensed gambling operations are illegal in New York, Respondent advertised on its Apple "App Store" page that it is "legal in all 50 states." Andreu Aff. ¶ 7, Ex. 7 (Apple "App Store" page).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk. 

34. Respondent has persistently advertised sports betting on its Platform since at least August of 2025. *See, e.g.*, Andreu Aff. ¶ 8, Ex. 8 (X.com post). For example, on August 17, 2025, Polymarket posted on its X.com account an advertisement for the launch of Respondent's U.S.-based mobile application, stating "BAD NEWS (For sportsbooks): Polymarket is coming home to the US. Be the first to know when. TRADE EVERY FOOTBALL GAME IN ALL 50 STATES" (emojis omitted). *Id*. This includes advertising directed at New Yorkers. For example, on January 8, 2026, Polymarket posted on its X.com account that "Madison Square Garden has named Polymarket as the Official & Exclusive Prediction Market Partner of the New York Rangers. As a NYC based company, we're honored & proud to defend home ice." Andreu Aff. ¶ 6, Ex. 6B (news article).

35. Further, Polymarket posted on its X.com account numerous advertisements leading up to the February 8, 2026, Super Bowl between the New England Patriots and Seattle Seahawks. Andreu Aff. ¶ 9, Exs. 9A & 9B (X.com posts).

36. As an inducement to participate in its gambling Platform, Respondent has offered various promotions. For example, on August 5, 2026, Polymarket posted on its X.com account that "[n]ew traders get $20 with code FREE20." Andreu Aff. ¶ 10, Ex. 10 (X.com post).

37. Respondent offers referral awards, whereby bettors can share a referral code with others and receive a reward if the referred person joins Polymarket US and deposits at least $10. Andreu Aff. ¶ 11, Ex. 11 (Referral Program FAQ).

38. Respondent also advertises and promotes betting on sports events in which New York professional and college teams participate. For example, in June 2026, Polymarket posted on its X.com account solicitations to bet on the NBA Finals, featuring the New York Knicks against the San Antonio Spurs. Andreu Aff. ¶ 12, Exs. 12A & 12B (X.com posts).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## B. Overview of Respondent's Platform

39. Respondent, through its Platform, allows bettors in New York and elsewhere, to place bets on the outcomes of future contingent events for which the outcome is uncertain and outside the control of the bettor. Andreu Aff. ¶ 14.

40. Respondent does so by offering for sale through its Platform contracts on events such as the sports events listed below. Andreu Aff. ¶ 15, Exs. 13 (website capture), 14 (mobile device application capture).






This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

41. Beyond sports-related events, Respondent also offers wagering on election and culture events such as the "New York Governor Election Winner" or which contestant would be eliminated in week four of the reality TV show "Big Brother Season 28." Metz Aff. ¶¶ 20-25.

42. The contracts allow a bettor to take a "Yes" or "No" position on whether a future, real-life event will occur by purchasing a "Yes" or "No" contract with prices in cents corresponding roughly to probability percentages. Andreu Aff. ¶ 16, Ex. 15 ("What Is Polymarket US?"). If the bettor's predicted event occurs, the contracts provide for Respondent to pay the bettor $1.00; if it does not occur, the bettor receives no payment. *Id.*

43. Each contract is a bet.

44. In each case, the bettor's return is determined by an outcome of a future contingent event outside his control or influence.

45. For example, on the afternoon of July 6, 2026, a bettor could buy a contract on Respondent's Platform for $0.52 that would pay $1.00 (or 1.88 contracts for $1, including $0.03 of fees, that would pay $1.88) if the Tampa Bay Rays won their professional baseball game held that day against the New York Yankees. Metz Aff. ¶ 8, Ex. 1 (screenshot).

46. Respondent charges the bettor a fee for placing wagers.

47. Respondent has repeatedly and persistently offered wagering on professional and college sports events through its Platform since at least December 3, 2025. Andreu Aff. ¶ 17, Ex. 4A (X.com post); *see generally* Metz Aff.

48. The sports events for which Respondent makes wagering available include, but are not limited to, professional and college basketball, major league baseball games, professional and college football games, tennis matches, and World Cup soccer matches. *See, e.g.*, Metz Aff. ¶ 10, Exs. 3A-D (screenshots).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

49. The sports events for which Respondent makes wagering available also include sports or athletic events in which New York college teams participate. For example, on August 7, 2026, Respondent offered contracts on the Platform allowing bettors to wager on whether a specific men's college basketball team, including the Syracuse Orange or St. John's Red Storm, would be the 2027 Men's College Basketball National Champion. Metz Aff. ¶ 11, Exs. 4A, 4B. Similarly, on August 24, 2026, Respondent, through its Platform, offered a contract on whether Buffalo would defeat Albany in the college football game taking place between those universities on September 3, 2026. Metz Aff. ¶ 12, Ex. 5.

50. Respondent also allows bettors to wager on the "spread" of the outcome of certain sporting events—*i.e.*, whether a team will win a sporting event by more or less than a specific scoring margin. For example, on July 23, 2026, Respondent offered a contract on whether the Los Angeles Dodgers would win their July 24, 2026, game against the New York Mets by over 1.5 runs. Metz Aff. ¶¶ 16-17, Exs. 7A, 7B (spread wager).

51. Respondent also allows bettors to bet a "combo," also known as a parlay, whereby bettors can combine individual bets to receive a larger payout if all combined bets are successful. Metz Aff. ¶ 19, Ex. 8 (observed combo wager).

52. Respondent offers sports wagering through its Platform by electronic means including a website and mobile device application. Metz Aff. ¶¶ 2, 5-6, 10-19 and accompanying exhibits; Andreu Aff. ¶ 13, Exs. 13, 14.

53. Respondent is not licensed by the New York State Gaming Commission in any capacity. Andreu Aff. ¶ 18, Ex. 16 (affirmation of Ed Burns), & Ex. 1 (Gaming Commission website captures).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk. 

### C. Opening an Account on Respondent's Platform

54. Bettors located in New York are able to access the Platform by opening an account through Respondent's mobile application or website. Metz Aff. ¶¶ 6, 29.

55. Respondent permits bettors under the age of 21, but at least 18 years of age to open an account. Andreu Aff. ¶ 19, Ex. 17 at II (1) (Member Agreement).

56. Once a bettor has an account with Respondent, the bettor can access the Platform, deposit funds, and place wagers through electronic means including the use of Respondent's website or a mobile device application. Metz Aff. ¶¶ 5, 29.

### D. Betting on Respondent's Platform

57. Respondent allows bettors to place wagers from New York and elsewhere via its Platform. Metz Aff. ¶¶ 3, 24-25.

58. A bettor enters wagers on Respondent's Platform by staking or risking money that the bettor gives to Respondent, which Respondent accepts or receives, for the bettor to place the wager.

59. A bettor pays a fee to Respondent for each wager entered. The fee is paid at the same time the bettor places the wager. The amount of the fee varies.

60. Respondent debits bettor accounts for each wager placed.

61. Respondent credits bettor accounts for successful wagers, paying $1.00 on each successful "event contract" purchased. Respondent also permits bettors to purchase a fractional wager, whereby a better purchases a fraction of one "event contract" and receives a proportionately lower payout (*i.e.*, less than a dollar) in the event of a successful wager.

62. For example, on the afternoon of July 6, 2026, Respondent offered a contract on who would win the MLB game between the New York Mets and the Atlanta Braves that occurred



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

on that date. As of approximately 10:39 am EDT on July 6, 2026, a bettor could wager that the New York Mets would win for a price of approximately $0.46 per wager, not including fees. Each wager would pay the bettor $1.00 if the New York Mets won the game or nothing if the Mets did not win. Metz Aff. ¶ 15, Exs. 6A (screenshot); 6B (confirmation), and 6C (video).

63. In the above example, on July 6, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform 6.39 wagers for the New York Mets to win the game for a total of $3.01, including fees. Respondent accepted and received the wagers. The bettor's account was charged a total fee of $0.10 for placing the 6.39 wagers. Respondent debited the bettor's account $3.01. Metz Aff. ¶¶ 3, 15, Exs. 6B (confirmation), 6C (video). Because the New York Mets won the game, the bettor received a payout of $6.39. Metz Aff. ¶ 14.

64. In another example, on August 7, 2026, Respondent offered a contract on who would be eliminated in week 4 of "Big Brother Season 28," the popular reality television competition. As of approximately 10:51 am EDT, a bettor could place a "Yes" wager that contestant Dee Valladares would be eliminated in week 4 of Big Brother Season 28 at a price of approximately $0.01 per wager. Each wager would pay the bettor $1.00 if Dee Valladares was eliminated in week 4, and nothing if she was not eliminated that week. Metz Aff. ¶ 20, Ex. 9A (screenshot).

65. In the above example, on August 7, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform 94 "Yes" wagers for Dee Valladares to be eliminated in week 4 of "Big Brother Season 28" for a cost of $1.00, including fees. Respondent accepted and received the wagers. Respondent charged the account a total fee of $0.06 for



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

placing the wagers. Respondent debited the account $1.00. Metz Aff. ¶¶ 3, 21, Ex. 9B (confirmation).

66. In another example, on August 24, 2026, Respondent offered a contract on "New York Governor Election Winner." As of approximately 3:20 pm EDT, a bettor could place a wager on either of two candidates to win the election. Metz Aff. ¶ 23, Ex. 10 (screenshot).

67. Respondent does not prohibit bettors between the ages of 18 and 21 from placing wagers on its Platform. Andreu Aff. ¶ 19, Ex. 17 at II(1) (Member Agreement).

68. Respondent accepts and receives bets and wagers in New York from bettors located in other states and provides information on its contracts from New York to bettors located in other states, including communications concerning winning bets and wagers entitling the recipient to payment. Metz Aff. ¶¶ 24-25, Exs. 13-14.

**E. Respondent's Bookmaking Activity**

69. Respondent engages in bookmaking in that it unlawfully accepts bets from members of the public, as a business, upon the outcomes of future contingent events.

70. On August 27, 2026, a bettor in New York with a New York-based account placed on Respondent's Platform over five bets totaling over $5,000, exclusive of fees. Respondent accepted and received the wagers. *See, e.g.*, Metz Aff. ¶ 26, Ex. 15 (screenshots).

71. The gambling business operated by Respondent, along with its parent and affiliates, reportedly is valued at more than $20 billion, and since launching its U.S. platform, that business's annualized revenue is reportedly well over $1 billion. Andreu Aff. ¶ 30, Ex. 27 (news article).

72. Respondent makes available on its website "Daily Market Reports" that reflect electronic records of contracts wagered on a daily basis, including the date of each transaction,



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the contract wagered upon, the settlement price per wager, and the volume of wagers placed. These records reflect that Respondent has received or accepted in one day more than five bets totaling more than $5,000 in wagering. Andreu Aff. ¶ 21, Ex. 18 (Daily Market Report).

**F. Respondent's Possession of Gambling Records**

73. Respondent provides bettors a written confirmation on Respondent's Platform after their wagers have been placed including confirming the event wagered upon, the cost of the wager, the odds of the wager placed, and the payout if the wager is successful. Metz Aff. ¶ 27, Exs. 6B, 7B, 9B, 13, 14, and 15 (screenshots of written confirmations).

74. Respondent also provides bettors access to electronic records of the bets placed on Respondent's Platform. Respondent maintains and provides information on open wagers that were placed (including, for example, identifying the event wagered upon, the cost of the wager, and the payout if the bet wins) and historic wagers that have been completed (including identifying the event wagered upon, the amount wagered, the outcome of the wager, and payouts on successful wagers). Metz Aff. ¶ 28, Exs. 16A-B (screenshots).

75. Respondent has agreed to maintain a "printable record of all of the terms of each trade entered into on the [Platform]". Andreu Aff. ¶ 22, Ex. 19 (Rulebook at 5.6(a)).

76. Respondent's confirmations, electronic records, and Daily Market Reports are each a writing, paper, instrument or article of a kind commonly used in the operation and promotion of a bookmaking scheme or enterprise.

77. Respondent's records reflect or represent more than five bets totaling more than $5,000. *See* Metz Aff. ¶ 26, Ex. 15 (screenshots); Andreu Aff. ¶ 21, Ex. 18 (Daily Market Report).

* * *



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk. 

78. As described above, what Respondent offers through its Platform is quintessentially gambling: it allows a bettor to stake or risk money upon the outcome of a contest of chance or a future contingent event not under the bettor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.

79. The outcome of Respondent's contracts depends to a material degree upon an element of chance, which in fact predominates over any skill of the bettor, notwithstanding that the skill of the bettor may also be a factor.

80. Respondent engages in conduct that materially aids gambling activity, including through the creation of its Platform; by offering its Platform in New York and to New Yorkers and others; by soliciting and inducing persons to participate in gambling activity; by providing a means for gambling activity to occur; and by managing, administering, or controlling sports wagering on its Platform.

## III. Respondent's Unlicensed Gambling Platform Causes Harm to New York

81. Respondent harms New York by offering wagers on its Platform.

82. As an unlicensed gambling business, Respondent operates without implementing required consumer protections and internal controls that are part of New York's strict regulation of licensed gambling. These protections include allocating resources to develop and fund programs to combat problem gambling, procedures to prevent underage gambling, restrictions to prevent predatory or deceptive advertising, procedures to identify bettors battling a gambling addiction, and guardrails to allow consumers to exclude themselves from the platform. *See generally* 9 NYCRR §§ 5300-5330.45.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

83. New York State regulators prioritize consumer protection, implementing detailed measures for responsible gaming, age verification, and problem gambling prevention. Andreu Aff. ¶ 23, Ex. 20, at 3-4, 7-8 (New York State Gaming Commission and Office of Addition Services and Supports report). For example, because sports wagering is prohibited for individuals under 21, licensed operators must have strict procedures to verify the age and identity of bettors. 9 NYCRR §§ 5329.8; 5329.19; 5330.10(d)(5). Licensed operators must also verify the locations of bettors. 9 NYCRR § 5330.44. Moreover, the state restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising set on college campuses, depicting students, and other restrictions. Racing Law §1367-a(4)(e); 9 NYCRR §§ 5329.37; 5330.45. Ads must display clear information and provide easy access to resources like 1-877-8-HOPENY. 9 NYCRR §§ 5325.6, 5329.37, 5330.34.

84. These and other numerous safety regulatory mechanisms not enumerated here exist for vital reasons. A report by the New York State Office of Addiction Services and Supports identified ages 18-24 as a "high-risk population" for gambling addictions. Andreu Aff. ¶ 24, Ex. 21 at 3, Table 1 (New York State Office of Addiction Services and Supports, Addiction Data Bulletin, No. 2025-06 (Apr. 2025)). Between 2020 and 2024, 1-877-8-HOPENY received more than 14,000 helpline calls. *See id.* at 2, Fig. 1. "As of 2022, mobile sports betting surpassed casino gambling as the primary reason for gambling-related helpline calls made by New Yorkers." *Id.* at 1.

85. Gambling may cause harm to a bettor's financial, emotional, and physical health. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) recognizes gambling disorder as a persistent and recurring pattern of problematic gambling behavior leading to significant distress or impairment. *Id.* at 1. Gambling disorder is



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk. 

the only behavioral addiction (as opposed to chemical substance use disorders) identified in DSM-5-TR. American Psychiatric Association, Internet Gaming, https://www.psychiatry.org/patients-families/internet-gaming, (last visited, Aug. 28, 2026).

86. The disorder includes symptoms such as a need to gamble with increasing amounts of money to achieve desired excitement; unsuccessful attempts to stop or control gambling; chasing losses; and lying to conceal the extent of gambling involvement. Andreu Aff. ¶ 26, Ex. 21 at 1.

87. The National Council on Problem Gambling's review of gambling addiction studies shows that "[t]he rate of gambling problems among sports bettors is at least twice as high as among gamblers in general" and that when sports wagering takes place online, the rate of problems is even higher. Andreu Aff. ¶ 27, Ex. 22 at 1 (Nat'l Council on Problem Gambling, A Review of Sports Wagering & Gambling Addiction Studies Executive Summary).

88. The effects of gambling addiction can be devastating. A review of studies analyzing the links between gambling addiction and suicide noted that studies have consistently found that gambling addiction increases the likelihood of suicidality. Andreu Aff. ¶ 28, Ex. 23 (GamblingHarm.org article). Further, "legalized sports betting amplifies emotional cues, as evidenced by increased [intimate partner violence] when a fan's home team unexpectedly loses." Andreu Aff. ¶ 28, Ex. 24 at 18 (Emily Arnesen & Kyutaro Matsuzawa, Sports Betting Legalization Amplifies Emotional Cues & Intimate Partner Violence (Oct. 30, 2025)).

89. Prediction markets also create significant risks to the financial well-being of consumers. The financial industry has begun issuing reports of increased financial risks associated with prediction markets, including the "overextension of credit and rising loan defaults." Andreu Aff. ¶ 29, Ex. 25 (Forbes.com article). An economic research study also



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

found: "The legalization of sports betting has far-reaching consequences for household financial health. It increases credit card balances, reduces available credit, increases lottery play, and decreases net investments in financial markets. These effects are particularly pronounced among financially constrained households." Andreu Aff. ¶ 29, Ex. 26 at 30 (Scott R. Baker *et al.,* Gambling Away Stability: Sports Betting's Impact on Vulnerable Households (Nov. 2024)).

90. Ultimately, it is these types of harms that the New York Constitution and gambling laws were intended to prevent in New York. Respondent is nonetheless subverting New York's express regime by facilitating gambling in New York without required responsible gambling features mandated for licensed sports wagering operations, and without any oversight by the New York State Gaming Commission, exposing New Yorkers to gambling addiction with few, if any, safeguards.

## CONCLUSION

91. Respondent, by operating an unlicensed gambling platform as a business, has engaged in repeated and persistent violations of the New York Constitution, New York Penal Law, the Racing Law, and the Wire Act.

92. OAG seeks an order and judgment: (a) permanently enjoining Respondent from continuing to operate a gambling business in New York without being licensed by the New York State Gaming Commission; (b) permanently enjoining Respondent and its principals, agents, and employees from violating the Constitution and laws of the State of New York, including Executive Law § 63(12), Penal Law §§ 225.05, 225.10, 225.20, Racing Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b), and 18 U.S.C. § 1084(a); (c) directing Respondent to produce an accounting of total bets placed, monies lost by customers in connection with its gambling business, and gains received by Respondent in connection with its gambling business; (d)



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

directing Respondent to pay restitution, disgorgement and damages; (e) pursuant to Penal Law § 80.10, directing Respondent to pay a penalty of three times the amount of Respondent's gain from the illegal practices alleged herein; (f) pursuant to Racing Law § 1367(16)(a), directing Respondent to pay a penalty of $100,000 for each offering or attempt to offer sports wagering or mobile sports wagering in New York without authorization; (g) pursuant to CPLR § 8303(a)(6), granting costs to New York of $2,000; and (h) granting such other and further relief as the Court deems just and proper.

## EVIDENCE

93. The Affirmation of Geoffrey R. Andreu sworn to on September 24, 2026, filed herewith and exhibits thereto, summarizes Respondent's illegal business practices.

94. The Affirmation of Brian Metz, sworn to on September 22, 2026, filed herewith and exhibits thereto, summarizes Respondent's illegal business practices.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York State Constitution Article I, Section 9*

95. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

96. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Article I, Section 9 of the New York State Constitution.

97. Article I, Section 9 of the New York State Constitution prohibits "lotter[ies] or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling," with certain exceptions.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

98. As set forth above, Respondent violates Article I, Section 9 of the New York State Constitution by operating its gambling Platform.

99. Respondent's Platform does not fall within any of the exceptions to the gambling prohibition set forth in Article I, Section 9 of New York's Constitution.

100. By its actions in violation of Article I, Section 9 of the New York State Constitution, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

**SECOND CAUSE OF ACTION**

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.10*

101. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

102. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.10.

103. Penal Law § 225.10 prohibits any person from promoting gambling in the first degree by knowingly advancing or profiting from unlawful gambling activity by engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars.

104. As set forth above, Respondent violates Penal Law § 225.10 by knowingly advancing and profiting from unlawful gambling activity by receiving and accepting in any one day, and indeed on many days, more than five bets totaling more than five thousand dollars.

105. By its actions in violation of Penal Law § 225.10, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**THIRD CAUSE OF ACTION**

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.05*

106. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

107. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.05.

108. Penal Law § 225.05 prohibits any person from promoting gambling in the second degree by knowingly advancing or profiting from unlawful gambling activity.

109. As set forth above, Respondent violates Penal Law § 225.05 by knowingly advancing or profiting from unlawful gambling activity.

110. By its actions in violation of Penal Law § 225.05, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

**FOURTH CAUSE OF ACTION**

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of New York Penal Law § 225.20*

111. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

112. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Penal Law § 225.20.

113. Penal Law § 225.20 prohibits any person from possessing gambling records in the first degree when, with knowledge of the contents thereof, he possesses any writing, paper,



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting or representing more than five bets totaling more than five thousand dollars.

114. As set forth above, Respondent violates Penal Law § 225.20 by, with knowledge of the contents thereof, possessing any writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise and constituting, reflecting or representing more than five bets totaling more than five thousand dollars.

115. To wit, Respondent maintains email confirmations, electronic records, and trade data reflecting or representing more than five bets totaling more than five thousand dollars.

116. By its actions in violation of Penal Law § 225.20, Respondent has engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

## FIFTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367(16)(a)*

117. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

118. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Section 1367(16)(a) of the Racing Law.

119. Section 1367(1)(x) of the Racing Law defines sports wagering to mean "wagering on sporting events or any portion thereof . . . by any system or method of wagering, including but not limited to . . . electronic communications through internet websites accessed via a mobile device or computer and mobile device applications . . . ."



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

120. Section 1367 of the Racing Law makes it a violation for any person, firm, corporation, association, agent, or employee, who is not authorized to offer sports wagering under Sections 1367 or 1367-a of the Racing Law, to offer or attempt to offer sports wagering or mobile sports wagering in New York. Racing Law § 1367(16)(a).

121. Respondent is not licensed with the New York State Gaming Commission in any capacity and is not otherwise authorized to offer sports wagering under Sections 1367 or 1367-a of the Racing Law in New York.

122. As set forth above, Respondent knowingly offers or attempts to offer sports wagering or mobile sports wagering in New York.

123. By its actions in violation of Section 1367(16)(a) of the Racing Law, Respondent has engaged in repeated and persistent illegal conduct, in violation of Executive Law § 63(12).

**SIXTH CAUSE OF ACTION**

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367-a(2)(a)*

124. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

125. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12) in that Respondent engaged in repeated illegal acts by violating Section 1367-a(2)(a) of the Racing Law.

126. Section 1367-a(2)(a) of the Racing Law prohibits any entity from "administer[ing], manag[ing], or otherwise mak[ing] available a mobile sports wagering platform to persons located in New York state" unless the entity is licensed with the New York State Gaming Commission.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

127. Respondent is not licensed with the New York State Gaming Commission in any capacity.

128. As set forth above, Respondent is administering, managing, or otherwise making available a mobile sports wagering platform to persons located in New York.

129. Respondent's conduct in violation of Section 1367-a(2)(a) includes making available and offering sports wagering based on prohibited sports events, which is prohibited.

130. Respondent's conduct in violation of Section 1367-a(2)(a) includes making available and permitting sports wagering by persons Respondent knew, or should have known, to be a prohibited sports bettor, to wit, minors between the ages of 18 and 21, which is prohibited.

131. By its actions in violation of Section 1367-a(2)(a), Respondent has engaged in repeated and persistent illegal conduct, in violation of Executive Law § 63(12).

**SEVENTH CAUSE OF ACTION**

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of Racing Law § 1367-a(4)(b)*

132. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

133. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Respondent engaged in repeated illegal acts by violating Section 1367-a(4)(b) of the Racing Law.

134. Section 1367-a(4)(b) of the Racing Law prohibits any entity from "directly or indirectly operat[ing] an unlicensed sports wagering platform in the state of New York."

135. Section 1367-a(4)(b) of the Racing Law also prohibits any entity from "advertis[ing] or promot[ing] such unlicensed platform to persons located in the state of New York."



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

136. Respondent is not licensed with the New York State Gaming Commission in any capacity.

137. As set forth above, Respondent has been directly or indirectly operating a sports wagering platform in New York since at least January 23, 2025.

138. As set forth above, Respondent advertises or promotes its unlicensed sports wagering platform to persons located in New York.

139. By virtue of its conduct alleged above, Respondent has engaged in repeated and persistent violations of Section 1367-a(4)(b) by operating an unlicensed sports wagering platform in the state of New York, in violation of Executive Law § 63(12).

140. By virtue of its conduct alleged above, Respondent has engaged in repeated and persistent violations of Section 1367-a(4)(b) by advertising or promoting such unlicensed platform to persons located in the state of New York, in violation of Executive Law § 63(12).

## EIGHTH CAUSE OF ACTION

*Pursuant to Executive Law § 63(12) (Repeated and Persistent Illegality)*
*Violations of The Federal Interstate Wire Act, 18 U.S.C. § 1084(a)*

141. The Attorney General repeats and re-alleges the paragraphs above as if fully stated herein.

142. The acts and practices alleged herein constitute conduct proscribed by Executive Law § 63(12), in that Respondent engaged in repeated illegal acts by violating the Federal Interstate Wire Act, 18 U.S.C. § 1084(a).

143. The Federal Interstate Wire Act, 18 U.S.C. § 1084(a), prohibits those engaged in the business of betting or wagering from knowing use of a wire communication facility for the transmission in interstate commerce of bets or wagers or information assisting in the placing of



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers.

144. By virtue of its conduct alleged above, Respondent has engaged in the business of betting or wagering and has knowingly used a wire communication facility, namely, the internet, to transmit in interstate commerce bets or wagers or information assisting in the placing of bets or wagers on sporting events or contests, and has transmitted wire communications which entitled the recipients to receive money or credit as a result of bets or wagers in violation of 18 U.S.C. § 1084(a).

145. Respondent's violations of 18 U.S.C. § 1084(a) constitute repeated and persistent illegal conduct in violation of Executive Law § 63(12).

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner respectfully demands that the Court issue an order and judgment against Respondent as follows:

A. Permanently enjoining Respondent and its principals, agents, and employees from operating an unlawful gambling business, or otherwise advancing gambling activity, or profiting from gambling activity, within or from New York or to persons in New York, without being licensed by the New York State Gaming Commission including, but not limited to, by:

   a. operating a business that offers contracts relating to sports, culture, elections, and other events without obtaining all the required licenses from the New York State Gaming Commission;

   b. permitting wagering by persons under the age of 21 in connection with any contract on those events; and



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

c. advertising, promoting, marketing, or soliciting participation (including promoting or advertising in college or university-owned news assets (*e.g.*, school newspapers, radio, telecasts) or on college or university campuses), in connection with any contract on those events;

B. Permanently enjoining Respondent and its principals, agents, and employees from violating the New York State Constitution Article 1, Section 9; Penal Law §§ 225.05, 225.10, and 225.20; Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367(16)(a), 1367-a(2)(a), 1367-a(4)(b); the Wire Act, 18 U.S.C. § 1084(a); and Executive Law § 63(12)

C. Directing Respondent to produce an accounting identifying each of its customers and itemizing bets placed by customers, monies lost by customers, and gains received by Respondent in connection with or as a result of the violations of law alleged herein;

D. Directing Respondent to make full restitution to customers who have engaged in betting on Respondent's platform;

E. Directing Respondent to pay damages caused, directly or indirectly, by the repeated and persistent illegality complained of herein;

F. Directing Respondent to disgorge all amounts obtained in connection with or as a result of the violations of law alleged herein;

G. Directing Respondent to pay a penalty of three times the amount of its gain from the violations of law alleged herein, pursuant to Penal Law § 80.10;

H. Directing Respondent to pay a penalty of one hundred thousand dollars ($100,000) for each offering or attempt to offer sports wagering or mobile sports wagering within or from New York without authorization, pursuant to Racing Law § 1367(16)(a);



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

I. Directing Respondent to pay prejudgment interest;

J. Awarding costs to Petitioner of two thousand dollars ($2,000) pursuant to CPLR § 8303(a)(6);

K. Authorizing Petitioner to docket as a money judgment any order issued by the Court on this motion fixing the amount of money owed by Respondent, including restitution, disgorgement, damages, penalties and costs, pursuant to CPLR § 2222; and



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

L. Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 24, 2026

LETITIA JAMES
Attorney General of the State of New York

By: [signature]

Geoffrey R. Andreu
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8769

Alejandra de Urioste
Assistant Attorney General

K. Brent Tomer
Assistant Attorney General

Nina Varindani
Assistant Attorney General

Tanya Trakht
Senior Enforcement Counsel

Kenneth Haim
Deputy Bureau Chief

Shamiso Maswoswe
Chief, Investor Protection Bureau

*Counsel for the People of the State of New York*



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## VERIFICATION

1. I, Geoffrey R. Andreu, Esq., am an Assistant Attorney General in the office of Letitia James, Attorney General of the State of New York, and I am duly authorized to make this verification.

2. I affirm this 24th day of September, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

3. The reason this verification is not made by Petitioner is that Petitioner is a body politic. The Attorney General is Petitioner's statutory representative.



Geoffrey R. Andreu



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.